UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER STRANGE, MAGAN MORRIS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

LES SCHWAB TIRE CENTERS OF OREGON, INC., et al.,

Defendants.

CASE NO. C06-045RSM

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

LES SCHWAB TIRE CENTERS OF WASHINGTON, INC., et al.,

Defendants.

This matter is now before the Court for consideration of defendants' two motions[1] for partial summary judgment on the individual claims of plaintiffs Jennifer Strange and Magan Morris. Dkt. ## 160, 163. Both plaintiffs have opposed the motions. The Court deems oral argument on these motions unnecessary and, for the reasons set forth below, shall deny both motions.

---

[1] The filing of multiple motions for summary judgment is strongly discouraged. Local Rule CR 7(e)(3).

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 1

BACKGROUND

The facts are well known to the parties and need only be briefly set forth here. Plaintiffs Jennifer Strange and Magan Morris both worked at various Les Schwab Tire Centers in Washington State in the "Sales and Administration" position, which involves sales, bookkeeping, and other clerical duties. Their Second Amended Complaint alleges, in essence, that defendant Les Schwab Tire Centers of Washington, Inc. ("Les Schwab Washington") unlawfully discriminated against them by denying them promotions to managerial positions. Les Schwab Washington is a "promote from within" company, and promotes managers only from the "Sales and Service" position, which involves installation of tires on automobiles, trucks, and heavy equipment. As defendant states in the motion for summary judgment, Sales and Service employees are "overwhelmingly male" and Sales and Administration employees are "overwhelmingly female." Dkt. # 16, p. 4; Dkt. # 163, p. 4. The result, according to plaintiffs, is that women are not promoted to managers. "To date, there has never been a female manager of any Les Schwab Tire Center retail store." Second Amended Complaint, Dkt. # 113, ¶ 4.3.

Plaintiffs' causes of action arise under both state and federal law. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, they assert claims of unlawful retaliation and constructive discharge. *Id.*, ¶¶ 6.2 - 6.5; 7.2 - 7.5. They also assert that defendant engaged in a pattern and practice of intentional discrimination in violation of the Washington Law Against Discrimination, RCW 49.60, together with individual claims of failure to promote, failure to train, retaliation and constructive discharge under state law. *Id.* ¶¶ 8.4 - 8.5; 9.2 - 9.8. The Court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.

DISCUSSION

**I. Summary Judgment Standard**

Summary judgment should be rendered "if the pleadings, discovery and disclosure material on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The

evidence is viewed in the light most favorable to the non-moving party. *Id*. "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d at 1221.

**II. Jennifer Strange's Claims**

Ms. Strange began working in her parents' tire store, Gilbert's Tires in Puyallup, Washington, in 1997. Gilbert's sold Les Schwab tires and was permitted to use the Les Schwab name, but was independently owned. Ms. Strange started working behind the counter, greeting customers, answering the telephone, and writing up orders. She also learned to work in the tire bays, changing and repairing tires and operating the equipment. Declaration of Jennifer Strange, Dkt. # 190, ¶ 3. She became Assistant Manager at Gilbert's in 2001. *Id*. The following year, in 2002, her parents sold the tire store to Les Schwab of Washington. In December 2002, employees of Gilbert's Tires were asked to fill out applications if they wanted to be considered for continued employment with Les Schwab. Ms. Strange submitted an application for the Assistant Manager position but believes that it was destroyed. Declaration of Jennifer Strange, Dkt. # 190, ¶ 4. She alleges that the new store manager, Mark Witham, told her that "no woman would ever make that kind of money in a Les Schwab Tire Store," and that she needed to submit a new application for the Sales and Administration position. *Id*. She did so and began working in that capacity when the store opened as a Les Schwab store on January 1, 2003.

In March 2003, after receiving very good marks on her performance evaluation, Ms. Strange asked Mr. Witham how she could work toward becoming an Assistant Manager. Mr. Witham responded that there was no higher position in the company for a "gal" than what she currently held. *Id*., ¶ 6. About a year later, in April 2004, Ms. Strange saw a posting for "third man" training for employees wishing to move into management. *Id*., ¶ 10. She called the training department in Prineville, Oregon to ask about attending the training. She was told that this was a "third **man**" class and was asked which

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 3

of the "guys" from the store would be attending. *Id*. When Ms. Strange responded that it was she who wanted to attend, Darla in the training office responded that the class was for "guys" and that "gals" do not go to the "third man" training classes. *Id*. Ms. Strange was then directed to talk to her manager about attending the class. *Id.* When Ms. Strange then asked Mr. Witham about attending, his response was that she was a "bookkeeper" and there were no training openings for a bookkeeper nor "third man" training positions for "gals." *Id*., ¶ 11. Subsequently, Ms. Strange spoke with an assistant manager at a nearby store to ask if she could be considered for a management position there. *Id*., ¶ 13. The response of the Assistant Manager, Jessie Horton, was that he would like to have her working at his store, but only as a Sales and Administration employee; he could not have a woman working in the tire bays. When specifically asked about a managerial position, Mr. Horton's response was, "What are the first three letters of **man**ager?" *Id*.

Ms. Strange filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 20, 2004. Declaration of Kenneth Diamond, Dkt. # 165, Exhibit F. She alleged that she was denied promotion and training opportunities on account of her sex. *Id*. In November of 2004, after learning of the EEOC charges, defendant offered plaintiff a position in Sales and Service at a nearby store in Spanaway, Washington. *Id*., Exhibit H. Ms. Strange declined the offer, believing that it was not "bona fide" and that she would face a hostile environment in the new store. Declaration of Jennifer Strange, Dkt. # 190, ¶¶ 34-39.

Following the filing of charges, Ms. Strange experienced what she believes to be retaliatory treatment from her manager Mr. Witham and others. She asserts, among other allegations, that her job duties and work hours changed, she was given odd break and mealtimes, she started receiving crank calls on her home phone and cell phone, and certain administrative duties were taken away from her. *Id*., ¶ 24. She was threatened with disciplinary action for leaving work early one day in November, when in fact she was working a split shift and actually left late because her replacement did not arrive on time. *Id.*, ¶ 25.

As a result of these and other experiences, Ms. Strange filed a second EEOC charge in December 2004, this time alleging retaliation for filing the prior charge. Declaration of Kenneth Diamond, Dkt. #

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 4

165, Exhibit I. Ms. Strange then requested and was granted leave under the Family and Medical Leave Act ("FMLA") for twelve weeks, until March 14, 2005, due to physical symptoms she was experiencing from her job situation. Declaration of Jennifer Strange, Dkt. # 190, ¶ 29. Within one week of returning to work, she asserts that Mr. Witham informed her that she no longer needed to dress nicely because she was being demoted to a janitorial position and would no longer work in Sales and Administration; a new person would take over her hours. *Id.*, ¶ 30. Ms. Strange felt she was being forced to resign, and left the store. *Id.*, ¶ 31. On March 23, 2005, she amended her EEOC charge to include a claim of constructive discharge. The retaliation and constructive discharge claims are the basis of her Title VII suit.

Defendant disputes various assertions made in plaintiff's factual recitation. In moving for summary judgment, however, defendant contends that even if the facts are viewed in the light most favorable to plaintiff, her claims fail as a matter of law.

With respect to the state law claim of failure to promote, defendant argues that this claim is barred by the three-year statute of limitations set forth in RCW 49.60. Defendant argues that Ms. Strange alleges she applied for and was denied the Assistant Manager position when Gilbert's Tire was bought out and opened as a Les Schwab store on January 1, 2003, but the lawsuit was not filed until January 11, 2006, ten days over the three-year statute of limitations. In making this argument, defendant has disregarded the subsequent requests for promotion and training detailed by Ms. Strange in her declaration, as set forth above. These are not time-barred and there is no basis for summary judgment as to any promotion requests subsequent to January 11, 2003.

Defendant also contends that the promotion claim fails because Ms. Strange was not eligible to be an Assistant Manager under the company-wide policy that promotions are made only from the Sales and Service position, and Ms. Strange never requested transfer to such position so that she could be promoted. In opposition to summary judgment, Ms. Strange states that in response to her repeated requests for promotion or training opportunities, Mr. Witham never told her she needed to transfer to a Sales and Service position first, to be eligible for promotion. Declaration of Jennifer Strange, Dkt. # 190, ¶ 14. Instead, she was simply told that no "gal" could hold a position in management. *Id.*

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 5

Similarly, she was told by Jessie Horton that he could not have a woman working in the tire bay (in Sales and Service), and that only men could be in management. *Id.,* ¶ 15. And when she attempted to apply directly for "third man" training in Prineville, she was told that was only for men. *Id.,* ¶ 10. These statements create a genuine issue of fact regarding whether plaintiff was denied opportunities to train and qualify for management. A reasonable juror could find from these facts, when viewed in the light most favorable to plaintiff, that the managers' failure to advise her of the need to transfer to a Sales and Service position was intentional, so that she would not be eligible for promotion.

Finally, defendant argues that plaintiff's promotion claim is foreclosed by her failure to accept a position in Sales and Service when it was offered, after she filed her first EEOC charge. However, Ms. Strange has set forth in her declaration her reasons for rejecting the offer. The reasonableness of defendant's job offer and of plaintiff's reluctance to accept both present questions for the jury to resolve. Summary judgment is accordingly DENIED as to Ms. Strange's state law promotion claim.

Defendant argues that plaintiff's retaliation claim, which is brought under both Title VII and state law, fails as a matter of law because she did not suffer any adverse employment action. In order to establish a prima facie case of unlawful retaliation under Title VII, plaintiff must demonstrate that she engaged in protected activity (such as filing an EEOC charge), the employer imposed some cognizable adverse action, and there was a causal connection between the two—that is, the employer had a retaliatory motive. *Wrighten v. Metropolitan Hospital, Inc.*, 726 F. 2d 1346, 1354 (9th Cir. 1984). The standard is the same under Washington state law. *Delahunty v. Cahooh*, 66 Wash. App. 829, 840-41 (1992).

The Supreme Court recently addressed the severity of conduct necessary to constitute adverse employment action, stating that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. V. White*, 548 U.S. 53, 68 (2006). The standard is an objective one, and a claim of retaliation must be analyzed in the full context of the facts of the case. *Id*. This is a broader standard than that applied to a Title VII discrimination claim under 42 U.S.C. section 2000e-2(a), where an

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 6

adverse action is one that "materially affect[s] the compensation, terms, conditions, or privileges of the [plaintiff's] employment." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir.2000). Even under the latter standard, courts of this circuit have found adverse employment action where employees were given different or more burdensome work responsibilities. *See Kortan v. Cal. Youth Auth*ority., 217 F.3d 1104, 1113 (9th Cir. 2000); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) ("Transfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions.' "); *Granville v. City of Portland*, 2005 WL 1113841, at * 7 (D.Or. May 10, 2005) (holding that a modification of plaintiff's job duties by removing tasks was an adverse employment action). On the other hand, harsh words or mere threats are insufficient to establish an adverse employment action, unless accompanied by more tangible actions affecting the employee's interests. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir.1998).

Ms. Strange has alleged that immediately after she filed her first EEOC charge, her manager began speaking to her harshly, she was given odd break and meal times, her telephone number was distributed to other employees and she began receiving crank and "hang-up" calls, and certain job duties were taken away from her. Declaration of Jennifer Strange, Dkt. # 190, ¶ 24. She overheard other managers laughing about the EEOC charge she had filed. *Id*., ¶ 21. Further, she was twice threatened with disciplinary action for actions that she did not in fact take. *Id.,* ¶¶ 24-27. Defendant has addressed the job duty, work hours, and manager's demeanor in the reply brief, but nowhere has defendant explained, defended, or even addressed the threats of disciplinary action. Defendant's Reply, Dkt. # 214, pp. 8-9. As to differences between Ms. Strange's declaration and her deposition testimony to which defendant has pointed, any such discrepancies go to her credibility and may be explored at trial, but they do not preclude summary judgment.

While no single one of these actions alleged by Ms. Strange might constitute an adverse employment action, the Supreme Court has instructed that they are to be viewed together, in the full context of the facts of the case. *Burlington Northern & Santa Fe Railway Co. V. White*, 548 U.S. at 68. (2008). A juror, viewing these actions in context from an objective point of view, could reasonably find an adverse employment action.

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 7

As for the third prong of the prima facie case, causation, the Ninth Circuit Court of Appeals has noted that timing alone can satisfy the causal connection element. *Stegall v. Citadel Broadcasting Co.*, 350 F. 3d 1061, 1068 (9th Cir. 2003). Plaintiff has alleged that these actions began shortly after she filed her first EEOC complaint. It remains for the jury to determine whether this proximity is sufficient to satisfy the causation element. Defendant's motion for summary judgment on the retaliation claim is accordingly DENIED.

Finally, defendant contends that Ms. Strange's constructive discharge claim should be dismissed because she voluntarily left her job. However, while resignations are presumed to be voluntary, a plaintiff may overcome that presumption under Washington state law by demonstrating a deliberate act by the employer that made her working conditions so intolerable that a reasonable person would have felt compelled to resign. *Washington v. Boeing*, 105 Wash. App. 1, 15 (2000). The standard is similar under Title VII, where a plaintiff "must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133 (2004).

Plaintiff has set forth in her declaration the facts which led to her belief that her working conditions had become intolerable, and that she was being forced to resign. These include the facts supporting her claim of retaliation, together with two events that occurred within a week after her return from FMLA leave: she was told by Mr. Witham that she would be doing janitorial work, and she was told another employee was coming on, whom plaintiff believed was intended to replace her. Declaration of Jennifer Strange, Dkt. # 190, ¶¶ 30-31. Defendant suggests that the janitorial duty was related to an upcoming "image contest" which required that the store be cleaned and repainted, and that for all plaintiff knew, Mr. Witham "was kidding her because she would be helping to clean the store for one day for the image contest." Defendant's Reply, Dkt. # 214, p. 10. However, what plaintiff knew or did not know about the image contest and whether Mr. Witham was "kidding" are matters that should be determined by the jury. The Court cannot say, as a matter of law, that plaintiff has not adequately demonstrated that her working conditions had become intolerable.

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 8

1    Defendant's motion for summary judgment is accordingly DENIED as to Ms. Strange's
2 constructive discharge claim.

### III. Motion to Strike

The motion to strike presented in defendant's Reply to the motion for summary judgment regarding the claims of Jennifer Strange (Dkt. # 214) is DENIED.

### IV. Magan Morris' Claims

Magan Morris began working part-time in the Sales and Administrative position in the Les Schwab Tacoma Pacific store in 1999, while she was a senior in high school. The following year she applied for and was hired in a "field bankruptcy" position, where she collected unpaid debts and represented Les Schwab at bankruptcy proceedings. When this position was eliminated after several months, Ms. Morris was hired as a Sales and Administrative employee at the Bellevue store. After working there for about six months, she left and took a Sales and Administrative position at a store in Portland, Oregon. In June 2002, she was hired at Gilbert's Tires in Puyallup, where she met Jennifer Strange. When the store became a Les Schwab store in 2003, there was only one Sales and Administrative position available, and Jennifer Strange was hired in that capacity. Ms. Morris, through zone manager Steve Vonderau, located a Sales and Administrative position at the SeaTac store, and she began working there.

In September 2003, Doug Mowbray, whom Ms. Morris knew from the Tacoma Pacific store, became Manager at the Sea-Tac store. Ms. Morris states that she asked him "if I could work or have training in the sales and service position so that I could move forward towards a higher position, namely Assistant manager." Declaration of Magan Morris, Dkt. # 193, ¶ 4. Mr. Mowbray responded that this "wasn't an option" because Ms. Morris was supposed to "train the guys . . . so that they could move forward." *Id.* Following this response, Ms. Morris joined Jennifer Strange in filing an EEOC charge of discrimination on October 2004.[2] Declaration of Kenneth Diamond, Dkt. # 162, Exhibit K.

In her declaration, Ms. Morris states that Mr. Mowbray's response was the second time she had

---

[2] Both Ms. Strange and Ms. Morris have in their declarations incorrectly given the date of the first EEOC charge as October 20, 2005. *See*, Dkt. # 190, ¶ 19; Dkt. # 193, ¶ 10. The correct date is reflected in the exhibits filed with defense counsel's declaration.

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 9

been told that promotion was "not an option" for her. *Id*., ¶ 6. She does not specify where or when this first request was made, but argues in her opposition to summary judgment that the first promotion request was made while she was working at the Tacoma Pacific store, which would have been in 1999. Plaintiff's Opposition, Dkt. # 192, p. 3 at n.1. Defendant contends that Ms. Morris' declaration is incomplete, in that the full statement of Mr. Mowbray was that training in the tire bays was "not an option **at this time,"** and that her declaration fails in other respects to align with her statements at deposition. These are matters that can be explored on cross-examination; they are not bases for dismissal of the promotion claim. Defendant also asserts that claims based on the 1999 event are time-barred. However, to the extent that events in 1999 serve as background for Ms. Morris' belief that she suffered discrimination when she heard the same response in 2003, there is no time bar.

Defendant contends that Ms. Morris cannot make a prima facie case of discrimination on her promotion claim because

> in her four years with Les Schwab, she asked one store manager (Mowbray) one time (although she cannot recall when) about obtaining "further training in the bays and the alignment and brakes side of it" and was told it was "not an option at this time."

Defendant's Motion, Dkt. # 160, p. 14. This summary mischaracterizes Ms. Morris' testimony. When the facts in her declaration are viewed in the light favorable to her, they show that she made two requests several years apart, that she was told each time that training in tire service so that she could "move forward" was "not an option," and that she understood that to mean that work in Sales and Service and training for promotion were not an option for a woman. Declaration of Magan Morris, Dkt. # 193, ¶¶ 3-7. The reasonableness of her belief, and her conclusion that it was futile to press further for training and promotion, are determinations to be made by the jury.

Defendant also contends that summary judgment is appropriate on Ms. Morris' promotion claim because she declined a position in Sales and Service when it was offered to her after she joined Ms. Strange in filing an EEOC complaint. However, as stated with respect to the same offer made to Ms. Strange, the reasonableness of defendant's Sales and Service job offer, and of plaintiff's reluctance to accept it, present questions for the jury to resolve. Summary judgment is accordingly DENIED as to Ms. Morris' state law promotion claim.

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 10

Ms. Morris, like Ms. Strange, alleges that she experienced retaliatory conduct after she filed her October 2004 EEOC charge. She states that she was called into Mr. Mowbray's office and subjected to verbal criticism, despite the fact that she had, just prior to filing the charge, been given an "exceeds requirements" on her performance evaluation. Declaration of Magan Morris, Dkt. # 193, ¶ 13. Her work schedule was changed, she was denied a particular Saturday off, and her parking location was changed to an unlighted, undesirable location. *Id.,* ¶¶ 14 - 15. The most significant act of retaliation, in her view, occurred on Saturday, December 4, 2004,[3] when

> a Sales and Service employee said in front of me, most of the entire crew and the Assistant
> manager, that I was nothing but a secretary. He then corrected himself
> and said, "oh, I am sorry, I meant bookkeeper" and then said, "because secretaries
> have sex with their bosses." This employee continued by asking the Assistant
> Manager, "So Kurt, have you hit that shit yet?" Kurt laughed and responded,
> "No way" and then walked off.

*Id.*, ¶ 16. When Ms. Morris brought this incident to the attention of the manager Mr. Mowbray on the following Monday, his response was to bring Ms. Morris into his office and make her repeat the offending statement in front of Mr. Klein, the employee who made the remark, and another Sales and Service employee, also male. *Id.*, ¶ 17. Although the employee and Assistant Manager Klein were both reprimanded for their conduct, Ms. Morris felt that being forced to repeat the remarks in front of four men, two of whom were involved in the incident, was humiliating and further indication of retaliation. *Id.*

Defendant moves for summary judgment on Ms. Morris retaliation claim by arguing that these events do not rise to the level of an adverse employment action. The Court agrees that some of the actions alleged by Ms. Morris, such as the change in parking spot, change in working hours, and the denial of a particular day off, may be trivial and not necessarily indicative of retaliation. But when viewed in the context of other events and actions that occurred at the same time, particularly the Saturday "sex with bosses" comment, they may be seen as constituting retaliation. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. at 68. (2008). A juror, viewing these events in context

---

[3]Ms. Morris declaration incorrectly gives the date as December 4, 2007. From the context and sequence of subsequent events, it is clear that she meant 2004, not 2007.

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 11

from an objective point of view, could reasonably find an adverse employment action. Summary judgment shall accordingly be DENIED as to the retaliation claim.

Like Ms. Strange, Ms. Morris took several months of FMLA leave because she was suffering physical symptoms from her situation at work. She returned to work April 11, 2005. On Saturday, April 16, 2005, plaintiff had an "altercation" with the manager's wife. It began with a telephone call in which Ms. Morris felt that Mrs. Mowbray was deliberately rude to her. When Mrs. Mowbray came into the store later that same day,

> [s]he walked up to the counter and came very close to me. I thought she was going to hit me and I braced myself for the punch I thought might be thrown. Mrs. Mowbry [sic] said in an angry tone, "Don't you ever tell me what I can and cannot do when I call or come into the store." I replied that I had never said anything like that and then asked if when she called she would not be so openly rude to me.
>
> Upon my saying that, Mrs. Mowbry [sic] walked behind the counter towards me. She came even closer to me and was visibly angry. She put her finger in my face and gritted her teeth. Mrs. Mowbry said in an even more angry and agitated tone that she had nothing more to say to me. I was fearful for my physical safety.

Declaration of Magan Morris, Dkt. # 193, ¶¶ 20 - 21. Customers in the store observed this incident, as well as employees, who offered no help or support to plaintiff. *Id.* On Monday, two days later, Ms. Morris tendered her resignation, and then filed an EEOC charge claiming constructive discharge.

Defendant has moved for summary judgment on the constructive discharge claim, contending that it fails as a matter of law. Defendant argues that the incident with Mrs. Mowbray, who was not a Les Schwab employee, was the sole retaliation experienced by Ms. Morris in the five days she worked after returning from FMLA leave. Further, she gave the company no opportunity to address the problem, and continued to refuse a standing offer for transfer into a Sales and Service position at a different store.

The Court has set forth above, the standards for a constructive discharge, but repeats them here. A plaintiff may overcome the presumption under Washington law that resignation was voluntary by demonstrating a deliberate act by the employer that made her working conditions so intolerable that a reasonable person would have felt compelled to resign. *Washington v. Boeing*, 105 Wash. App. at 15. (2000). Under Title VII, a plaintiff "must show that the abusive working environment became so

ORDER ON MOTIONS FOR PARTIAL
SUMMARY JUDGMENT - 12

intolerable that here resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. at 133.

In considering plaintiff's allegations relating to her claim of constructive discharge, the confrontation with the manager's wife cannot be viewed in isolation. According to Ms. Morris, this was the second time that she suffered severe humiliation in front of other employees, and in this case, in front of customers as well. She already felt that Mr. Mowbray had retaliated against her by unfairly criticizing her performance in front of others. She stated in her declaration that the events caused her symptoms severe enough that she was certified for medical FMLA leave. It is for the jury to determine whether the additional humiliation of the altercation with the manager's wife was sufficient to render Ms. Morris' working situation so intolerable that resignation was a fitting response. *Id*. Summary judgment is accordingly DENIED as to Ms. Morris' constructive discharge claim.

In summary, defendant's two motions for summary judgment on the individual claims of plaintiffs Morris and Strange, Dkt. ## 160 and 163, are DENIED in their entirety.

Dated this _8_ day of September 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE