UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER STRANGE AND MAGEN MORRIS,

Plaintiffs,

v.

LES SCHWAB TIRE CENTERS OF WASHINGTON, INC., et al.,

Defendants.

CASE NO. C06-0045RSM

ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS

This employment discrimination action arose under the Washington Law Against Discrimination, RCW 49.60 ("WLAD"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. The jury found in favor of each plaintiff on some but not all of her claims, and awarded each plaintiff damages for emotional distress in the amount of $42,600, together with punitive damages of $100,000, for a total award of $285,200. Jury Verdict, Dkt. # 354. The matter is now before the Court for consideration of plaintiffs' motion for attorneys' fees, expenses and costs. By this motion plaintiff seeks attorneys' fees in the amount of $634,370, plus an upward adjustment of 1.25, for a total of $792,962.50 in attorneys' fees; costs and expenses in the amount of $52,836.35; and attorneys' fees for preparation of the petition in the amount of $44,160, plus additional fees and expenses of $2,990. Defendants have opposed the amount of the award, contending that plaintiffs' limited success in this matter supports a substantial reduction in the amount awarded, and that the multiplier be denied altogether. The Court has fully considered the record and the parties' memoranda, and for the reasons set forth below, now grants in part and denies in part plaintiff's motion.

ORDER ON MOTION FOR ATTORNEYS'
FEES - 1

DISCUSSION

**I. Amount of Attorneys' Fees**

**a. Legal Standard**

The Ninth Circuit "requires a district court to calculate an award of attorneys' fees by first calculating the 'lodestar.'" *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir.2000) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.1996). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363. It also incorporates consideration of the results obtained by the prevailing litigant, as required by *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and several other relevant considerations as well. *See Morales*, 96 F.3d at 363, n. 8). "A strong presumption exists that the lodestar . . . represents a reasonable fee . . . " *G & G Fire Sprinklers, Inc. v. Bradshaw*, 136 F.3d 587, 600 (9th Cir.1998), vacated on other grounds *sub nom. Bradshaw v. G & G Fire Sprinklers, Inc*., 526 U.S. 1061, 119 S.Ct. 1450, 143 L.Ed.2d 538 (1999).

Where, as here, the plaintiff succeeds on only some of her claims, the Court must address two questions under *Hensley*: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which [she] succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434. As the Ninth Circuit Court of Appeals has explained,

> If the plaintiff has prevailed on some claims but not on others, the court must evaluate whether the successful and unsuccessful claims are "distinctly different claims for relief that are based on different facts and legal theories" or whether they "involve a common core of facts or [are] based on related legal theories." *Id*. at 434-35, 103 S.Ct. at 1940. If the claims are distinctly different, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id*. at 440, 103 S.Ct. at 1943. This must be, the Hensley Court explained, because "work on [such] an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.' " *Id*. at 435, 103 S.Ct. at 1940 (quoting *Davis v. County of Los Angeles*, 8 EPD ¶ 9444, at 5049, 1974 WL 180 (C.D.Cal.1974), which the Senate Report cited in the legislative history of § 1988). But if the claims are related, the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," *id*., and "a plaintiff who has won substantial relief should not have [her] attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440, 103 S.Ct. at 1943.

ORDER ON MOTION FOR ATTORNEYS'
FEES - 2

*Schwarz v. Secretary of Health & Human Services,* 73 F.3d 895, 901 (9th Cir. 1995).

Following *Hensley*, courts in the Ninth Circuit have been instructed to apply a two-part analysis in cases where a plaintiff's success is limited:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

*Id.*, quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986); (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940).

The first step requires the district court to determine whether the successful and unsuccessful claims were related or unrelated. *Webb v. Sloan*, 330 F.3d 1159, 1168 (9th Cir. 2003). As stated above, claims are unrelated if the successful and unsuccessful claims are 'distinctly different' *both* legally and factually. *Id.* at 1169 (quoting *Schwarz*, 73 F.3d at 901, 902 (emphasis in original). Claims are related, on the other hand, if they "involve a common core of facts or are based on related legal theories." *Id.* at 1168. At bottom, "the focus is on whether the unsuccessful and successful claims arose out of the same 'course of conduct.' " *Id.* at 1169. If they did not, they are unrelated under *Hensley*, and the hours expended on the unsuccessful claims should not be included in the fee award. *Id.* ; *Schwarz*, 73 F.3d at 901.

If, however, "the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Schwartz*, 73 F. 3d at 902-03 (internal quotation marks and citations omitted). "Where a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. However, when a plaintiff has achieved only partial or limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436, 103 S.Ct. 1933. Nonetheless, a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee. *Id.* at 435 n. 11, 103 S.Ct. 1933*; Sorenson v.*

ORDER ON MOTION FOR ATTORNEYS'
FEES - 3

*Mink*, 239 F.3d 1140, 1147 (9th Cir.2001).

Under Washington law, the process is similar. In calculating a fee award, a trial court first determines a lodestar fee by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Pham v. City of Seattle*, 159 Wash.2d 517, 538, 151 P.3d 976 (2007). After determining the lodestar, the trial court may then adjust the award upward or downward "to reflect factors not already taken into consideration." *Broyles v. Thurston County*, 147 Wash.App. 409, 452, 195 P.3d 985 (2008) (quoting *Ross v. State Farm Mut. Auto. Ins. Co.*, 82 Wash.App. 787, 800, 919 P.2d 1268 (1996), *rev'd on other grounds*, 132 Wash.2d 507, 940 P.2d 252 (1997)). Trial courts may adjust the lodestar "to account for a number of subjective factors," including the time expended on the case, the difficulty of the questions involved, the skill required, the customary hourly rate of other attorneys, the amount involved, the benefit resulting to the client, the contingency or certainty in collecting the fee, and the character of the employment. *Scott Fetzer Co. v. Weeks*, 122 Wash.2d 141, 150, 859 P.2d 1210 (1993). In addition, the trial court "should discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time.'" *Pham*, 159 Wash.2d at 538, 151 P.3d 976 (citing *Bowers v. Transamerica Title Insurance Co*., 100 Wash.2d 581, 597, 675 P.2d 193 (1983)). "The hours reasonably expended must be spent on claims having a 'common core of fact and related legal theories.'" *Pham*, 159 Wash.2d at 538.

Plaintiffs propose a lodestar figure of $634,370, representing 1799.4 hours of work by their attorneys and paralegals up through the trial date of November 9, 2009, at hourly rates from $175 to $400 per hour for the attorneys, $125 per hour for the paralegals, and $75 for the litigation clerks. The vast majority of the time billed is for lead counsel Warren Martin, at $400 per hour. Defendants do not challenge the current hourly rates, but assert that not all work over the past four years should be billed at this rate. Further, defendants contend that the number of hours spent is unreasonable, and many hours should be excluded. The Court turns first to the reasonableness of the time spent on this matter.

**1**. **Reasonableness of the Time Spent**

"In determining reasonable hours, [the party requesting fees] bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los*

ORDER ON MOTION FOR ATTORNEYS'
FEES - 4

*Angeles*, 796 F. 2d 1205, 1210 (9th Cir. 1986).  Plaintiffs have submitted the required detailed records to document the time spent.

As plaintiffs succeeded on some, but not all, of their claims, the Court turns to the first question under *Hensley*, which is whether the failed claims were related or unrelated to the successful claims. *Hensley*, 461 U.S. at 434.  Defendants have created a chart detailing what they assert are twenty-six separate claims, stating that "[u]ltimately, plaintiffs pursued 26 claims and prevailed on only a meager four of them."  Defendants' Opposition, Dkt. # 373, p. 4.  Defendant's chart of claims attempts to make the plaintiffs' level of success in this action to appear to be insignificant, but that is not the case.  Of the twenty-six claims listed by defendant, ten—involving class action claims under the laws of California, Montana, Nevada, Utah, and Idaho—were dropped from the case early on, with no significant expenditure of effort other than the drafting of the complaint.  Plaintiff's first amended complain was brought under the laws of Oregon and Washington, as well as Title VII, but the Oregon claims were also abandoned by plaintiffs early on.  *See*, Motion to Dismiss Claims under Oregon Law, Dkt. # 65.  Thus the only claims that were actually "pursued" by plaintiffs were the claims asserted in the Second Amended Complaint, filed November 18, 2008.  Dkt. # 113.  These are the claims which actually went to the jury:  retaliation and constructive discharge under Title VII and the WLAD, and discrimination in promotion, in violation of the WLAD.  *Id*.; Jury Verdict, Dkt. # 354.    The Second Amended Complaint also asserted a "pattern and practice" claim against a class of women, but this claim was not pursued subsequent to the Court's denial of class certification on procedural grounds.  Defendants' claim chart also lists Title VII promotion claims as having been rejected by the jury, but there were no Title VII promotion claims asserted in the Second Amended Complaint.  Dkt. # 113.   Thus, of the twenty-six claims listed by defendants, only ten were actually pursued by plaintiffs.  They succeeded on four of these ten claims, but they also succeeded on a claim for punitive damages, which was not included in defendants' chart.

The question before the Court is not the mathematical ratio of success to failure, but rather whether the successful and unsuccessful claims are related.  Claims are related if they "involve a common core of facts or are based on related legal theories." *Webb,* 350 F. 3d at 1168.  At bottom, "the

ORDER ON MOTION FOR ATTORNEYS'
FEES - 5

focus is on whether the unsuccessful and successful claims arose out of the same 'course of conduct.' " *Id*. at 1169. Applying this standard, the Court finds that the promotion, retaliation, and constructive discharge were all related because they involved a common core of facts and arose from the same course of conduct. Each plaintiff told a complete story, no individual part of which could be separated for the purpose of segregating the time spent on her claims. In the end, the jury necessarily found against each plaintiff on her promotion claim because the evidence showed that neither plaintiff worked in the tire-changing position from which, under company policy, she could be promoted. Yet each plaintiff presented evidence demonstrating that she reasonably believed that she was discriminated against in promotion, and that she was retaliated against for protesting that discrimination. The discrimination and retaliation claims were thus "inextricably intertwined." *Passantino v. Johnson and Johnson Consumer Products, Inc*., 212 F. 3d 493, 518 (9th Cir. 2000); citing *Moyo v. Gomez*, 32 F.3d 1382, 1384-85 (9th Cir.1994). The jury found the story told by the plaintiffs about defendants' entire course of conduct sufficiently compelling to award each plaintiff punitive damages on her retaliation claim.

Having found that the successful retaliation claims and the unsuccessful promotion and constructive discharge claims are related, the Court must next evaluate the significance of the overall relief obtained by the plaintiffs. Where a plaintiff has obtained excellent results, her attorney should recover a fully compensatory fee. *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. The results obtained here, while not complete, are significant, particularly in the award of punitive damages. Further, because the promotion claims and retaliation claims are inextricably intertwined, time spent on the two plaintiffs' discrimination claims contributed to the success of their retaliation claims. *Passantino*, 212 F. 3d at 518, citing *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir.1991). The plaintiffs are accordingly entitled to a compensatory fee for work on the promotion and constructive discharge claims, as well as the retaliation claims.

However, as set forth above, the Court should still exclude those hours that were not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Hensley.* 461 U.S. at 433. Defendants have identified several categories which they contend should be excluded from compensable time. Among these categories is time spent on the individual plaintiffs' promotion claims, which the

ORDER ON MOTION FOR ATTORNEYS'
FEES - 6

Court has already determined is so intertwined with the retaliation claim that the time spent should be considered time reasonably spent, even if the claims were ultimately unsuccessful. The Court declines to exclude this time. As to other categories itemized by defendants, however, the Court finds that several have been correctly identified by defendants as time that should be excluded. These categories are:

(1) <u>Time spent on the unsuccessful class claims and class certification efforts</u>:

Plaintiffs have excluded some, but not all of this time. Defendants have identified an additional 64.4 hours which were devoted to class issues, accounting for $22,120 of the fee request. Defendants have coded these entries with a "1." The Court finds that this time should be excluded and therefore shall deduct **$22,120** from the amount requested for fees.

(2) <u>Time spent on the EEOC's hiring claim</u>:

Defendants have identified 125.3 hours which were spent on this issue, amounting to $47,730 in fees. These entries are coded with a "2."  The Court finds this time should be excluded and accordingly deducts **$47,730** from the fee award.

(3) <u>Time spent on the EEOC's promotion claim</u>:

Defendants have identified 16.3 hours which were devoted to this issue, accounting for $6,490 in fees. These entries are coded with a "3." The Court finds that this time should be excluded and accordingly deducts **$6,490** from the fee award.

(4) <u>Time spent on unsuccessful motion practice, uncalled witness, and time unrelated to this lawsuit</u>:

Defendants have identified 45.4 hours which were devoted to opposing a motion to compel, interviewing witnesses who were not called at trial, and obtaining unemployment benefits for one of the plaintiffs. Defendants coded these entries with a "7." The requested fees for this unrelated or unsuccessful work amount to $16,335. The Court finds this time should be excluded and deducts **$16,335** from the fee award.

(5) <u>Items without sufficient detail</u>

Defendants contend that another $101,935 in fees should be excluded because the entries are

ORDER ON MOTION FOR ATTORNEYS'
FEES - 7

"too vague to discern whether the time sought is recoverable." Declaration of William Stafford, Dkt. # 374, ¶ 18. Defendants have coded these items in the billing sheets with an "8." Apparently defendants seek exclusion on the basis that the entries are not clearly identified as pertaining to the successful retaliation claim. However, the Court has determined that the successful and unsuccessful claims are related and inextricably intertwined, such that time devoted to the retaliation claim need not be segregated in the billing entries. The Court has reviewed these entries and finds that almost all of them represent time which was reasonably related to the success achieved by plaintiffs. Only two entries, indicating time spent on a telephone conference with Department of Agriculture representatives (October 29, 2004), and a review of "Scott Thompson material" (January 12, 2007) are so vague as to require exclusion. These two entries account for 5.5 hours of Mr. Ellsworth's time. The Court will accordingly deduct **$1,925** (5.5 x $350 per hour) from the fee award.

(6) <u>Other categories identified by defendants</u>

Defendants also contend that time spent on unsuccessful claims (the discrimination and constructive discharge claims), which defendants coded with a "5" or a "6" should be excluded. As the Court has explained above, because the claims are related the work on the unsuccessful claims contributed significantly to plaintiffs' overall success. The same is true of counsels' time spent in conference with the EEOC attorneys, or attending depositions of defendants' managers even if they were noted by the EEOC rather than plaintiffs, and other time related to the consolidated case. The Court finds that none of these entries, which are coded with a "4" by defendants, represent time which should be excluded.

In summary, the amount to be deducted from the fee award, representing time that was not reasonably spent under *Hensley*, totals **$94,600**.

**2**. **Reasonableness of the Hourly Rate**.

Defendants have not challenged the current hourly rates in plaintiffs' fee request. However, they assert that plaintiffs should be compensated at the actual hourly rates over the extended course of this litigation, which would presumably result in a lower hourly rate for time spent in 2006 and 2007 than for 2008 and 2009. Defendants also contend that plaintiffs are "largely to blame for the lengthy delay in

ORDER ON MOTION FOR ATTORNEYS'
FEES - 8

bringing this case to trial." Defendants' Opposition, Dkt. # 373, p. 12.  The Court declines to accept defendants' argument, noting in particular that it was the entry of the EEOC into this case which made it far more complex than a routine employment discrimination case.  Defendants joined the individual plaintiffs in stipulating to have the cases consolidated. Dkt. # 15.  Defendants than moved, twice, to sever the cases, once unsuccessfully and then successfully. Dkt. ## 75, 204.  All of these actions contributed significantly to the delay in bringing the individual plaintiffs' case to trial.

As to defendants' argument on hourly rates over time, the Court notes that the purpose behind fee-shifting provisions is to provide an incentive for private enforcement of public policy, such as the laws against discrimination asserted here. *Fisher Properties, Inc., v. Arden-Mayfair, Inc.,* 115 Wash. 2d 364, 376 (1990).  Fee awards encourage attorneys to take potentially risky cases with clients who may not be able to pay. *Id*.  The goal is to attract competent counsel to litigate these cases which represent the public interest.  To that end, it is appropriate to use the attorney's current billing rate to "compensate the attorney for delay in payment or the risk of losing and not getting paid at all." *Id*.; *Phan v. City of Seattle*, 124 Wash. App. at 726.

The Court accordingly finds that the billing rates proposed by plaintiffs are reasonable and supported by the attorneys' experience, expertise, and degree of success obtained here, as well as by case law which encourages payment for attorneys who take on public interest cases at their current billing rate to compensate them for the risk assumed in taking the case on contingency. *Id*.  The Court thus approves the hourly rates proposed by plaintiffs.

Accordingly, the lodestar amount requested by plaintiffs is hereby adjusted, as set forth above, by a reduction of **$94,600**.  With this reduction, the lodestar figure for work performed through November 9, 2009,  the date of the jury verdict, is **$539,770**.

**3. Adjustment of the Lodestar Figure**

The lodestar amount is presumptively reasonable. *Xieng v. Peoples National Bank*, 63 Wash. App. 572, 587 (1991); *affirmed*, 120 Wash. 2d 512 (1993).  It is within the Court's discretion to adjust the lodestar upward or downward, if appropriate to reflect "either the contingent nature of the representation or the quality of the representation, provided those factors have not already been factored

ORDER ON MOTION FOR ATTORNEYS'
FEES - 9

into the lodestar amount. *Perry v. Costco*, 123 Wash. App. 783 (2004).

The standard applied in federal cases is that the lodestar amount may be adjusted for factors not subsumed into the lodestar, but "only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mutual Life* Co., 214 F. 3d 1041, 1045 (9th Cir. 2000) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

Plaintiffs have requested that a multiplier of 1.25 be applied to the lodestar figure. Plaintiffs cite pre-*Hensley* cases for this request. Under *Hensley*, factors such as the time and labor required, the novelty or difficulty of the issues, the attorneys' skill, preclusion of other employment, the results obtained, and awards in similar cases are all subsumed into the lodestar figure. *Van Gerwen*, 214 F. 3d at 1045 n. 2. Plaintiffs have not presented any specific evidence that the "presumptively reasonable" lodestar amount is unreasonably low, and therefore is not entitled to an upward adjustment under federal law.

Under Washington law, a court's determination on the matter of a multiplier is guided by the following well-reasoned statement in *Pham*:

> In cases where the attorney's compensation is contingent on success, the court may consider the necessity of adjusting the lodestar figure to account for the risk factor. This calls for an assessment of what the likelihood of success was at the outset of litigation. The contingency adjustment is designed solely to compensate for the possibility that the litigation would be unsuccessful and that no fee would be obtained. It should not be granted in a case where the hourly rate underlying the lodestar figure already comprehends an allowance for the contingent nature of counsel's work. The burden of justifying any deviation from the lodestar rests on the party proposing the deviation.

*Pham*, 124 Wash. App. at 721-722 (internal citations to *Bowers v. Transamerica Title Insurance Co.*, 100 Wash. 2d 581 (1983) omitted).

Plaintiffs have not met their burden of justifying a deviation from the lodestar under either state or federal law. The preclusion of other work asserted by plaintiffs (an assertion contested by defendants) is not a basis for deviation here. Further, both the contingent nature of the case and counsel's skill and reputation have already been factored into the hourly rate of the lodestar figure. *Pham*, 124 Wash. 2d at 722. The Court therefore declines to apply a multiplier to the lodestar figure of **$539,770**.

**II. Costs**

ORDER ON MOTION FOR ATTORNEYS'
FEES - 10

Plaintiffs request costs in the amount of $52,836.35 for expenses up to the date of trial, and have presented an itemization of the expenses. Defendants have objected to many of the costs, often on the basis that they are unrelated to the claims on which plaintiffs succeeded. However, as explained above, plaintiffs are entitled to recover fees and costs for work on unsuccessful claims, so long as they are sufficiently related to the successful claims. This would apply, then, to costs incurred for work related to the plaintiffs' promotion and constructive discharge claims, as well as part of the EEOC consolidated case claims. Costs incurred for work on the class claims and the EEOC hiring claim, which was unrelated to the plaintiffs' claims, are not recoverable. Applying these guidelines, the Court shall deduct the following amounts from plaintiffs' cost petition:

(1) airfare for travel to depositions of EEOC hiring class witnesses: **$755.60.**

(2) car rental for the above depositions: **$168.66**.

(3) deposition transcripts of EEOC hiring class witnesses: **$1,763.60**.

(4) deposition of Daryl Long: **$125**.

(5) amount paid to an unnamed person for an unidentified purpose (see Declaration of William Stafford, Dkt. # 374, ¶ 32): **$4,516**.

(6) hotel expenses for EEOC hiring class witness depositions: **$298.39**.

(7) Lexis research at the beginning of the case, before EEOC charges were filed: **$84.00**.

(8) telephone calls to possible witnesses at the beginning of the case, **$51.77**.

(9) meal expenses for the deposition of EEOC hiring class witnesses, and lunch at the Tacoma Club: **$130.02** and **$40.26.**

(10) mileage expenses for attending depositions of EEOC hiring class witnesses: **$421.85**

(11) parking fees for Eric Gilman on November 13, 2009: **$7.00**

(12) copying fees which were previously reimbursed: **$228**

(13) travel expenses for the EEOC hiring class depositions in Sacramento: **$18.18**.

The total to be deducted from plaintiffs' cost petition is **$8,608.33.** Plaintiffs shall be awarded the balance of their cost petition, totaling **$44,228.02.**

**III. Preparation of the Petition and Post-Petition fees and Expenses**

ORDER ON MOTION FOR ATTORNEYS'
FEES - 11

Plaintiffs are entitled to costs and fees for preparation of the fee petition and other post-trial matters. Plaintiffs have submitted these itemized charges in a supplemental Declaration of Warren Martin, requesting an additional **$44,160** in attorneys' fees and **$2,990** in costs. Dkt. # 378. Defendants have not requested an opportunity to contest the fees and costs presented in the supplemental declaration. Accordingly, the number of hours expended, hourly rates, and costs are approved as submitted.

### CONCLUSION

With the deductions set forth above, plaintiffs shall be awarded a total of **$583,930** in attorneys' fees and **$47,218.02** in expenses. The Clerk shall enter judgment accordingly.

Dated this 1 day of June 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR ATTORNEYS'
FEES - 12